824 A.2d 1120 (2003)
361 N.J. Super. 217
Robert BOTTI, Plaintiff-Respondent,
v.
CNA INSURANCE COMPANY, Defendant-Appellant,
State Farm Insurance, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted November 4, 2002.
Decided June 17, 2003.
*1122 Jerald J. Howarth, Parsippany, argued the cause for appellant CNA Insurance Company (Hahn & Howarth, attorneys; Mr. Howarth, on the brief).
Dennis F. Wagenblast, Toms River, argued the cause for respondent Robert Botti (Mr. Wagenblast, on the brief).
Harold H. Thomasson, Cherry Hill, argued the cause for respondent State Farm Insurance Company (David B. Wright & Associates, attorneys; Mr. Thomasson, on the brief).
Before Judges HAVEY, A.A. RODRIGUEZ and WELLS.
*1121 The opinion of the court was delivered by RODRIGUEZ, A.A., J.A.D.
This appeal requires us to consider the enforceability of a "step-down" clause included in an uninsured/underinsured endorsement (UM endorsement) for a policy issued to a corporation as a "named insured." The specific issue is whether the step-down clause limits the UM coverage afforded to an employee who is the "named insured" in another policy with lower UM limits. The trial court found that the step-down clause was not applicable in that instance, because the employee was deemed a "named insured" under the employer's policy. We conclude that the employee is not a "named insured." Thus, the step-down limitation applies. We reverse, being mindful that our holding differs from two decisions by other panels of this court: Macchi v. Connecticut Gen. Ins. Co., 354 N.J.Super. 64, 804 A.2d 596, certif. denied, 175 N.J. 79, 812 A.2d 1111 (2002) and Araya v. Farm Family Cas. Ins. Co., 353 N.J.Super. 203, 801 A.2d 1194, certif. denied, 175 N.J. 77, 812 A.2d 1109 (2002).
The facts are undisputed. On March 27, 2000, plaintiff Robert Botti was driving a Jeep owned by his employer, J.W. Goodliffe & Son, Inc. (JWG). An unidentified vehicle made a sudden wide left turn forcing Botti to swerve to the right and off the road. The Jeep struck a utility pole. The unidentified vehicle drove away. Botti sustained three fractured bones in his right ankle and lower right leg. As a result, Botti underwent three surgeries and was out of work for seventeen weeks.
*1123 Botti was authorized by JWG to take the Jeep home on a regular basis for personal and business use. Botti paid $15 weekly to JWG, through a payroll deduction, to help cover the cost of insurance. JWG and two related corporations were the "named insureds" in a policy issued by CNA Insurance Company (CNA) for several vehicles.[1] In addition to the "named insured," other persons were deemed "insureds" for UM coverage, including anyone occupying a covered auto or a temporary substitute for such auto. Thus, Botti is an "insured" under the CNA policy by virtue of being an occupant of the Jeep at the time of the accident. The Jeep was designated as vehicle number thirty-eight on JWG's business auto insurance policy. The UM coverage limit for the Jeep was $1 million.
The CNA policy contained a limitation or step-down clause with respect to the UM coverage. The limitation is found in section D of the UM endorsement, which provides that:
Regardless of the number of covered `autos', `insureds', premiums paid, claims made or vehicles involved in the `accident', the Limit of Insurance shown in the Schedule or Declarations for Uninsured Motorists Coverage and Underinsured Motorists Coverage is the most we will pay for all damages resulting from any one `accident' with an `uninsured motor vehicle' or an `underinsured motor vehicle'.
a. However, subject to our maximum Limit Of Insurance for this coverage, if:
(1) An `insured' is not the individual named insured under this policy;
(2) That `insured' is an individual named insured under one or more other policies providing similar coverage; and
(3) All such other policies have a limit of insurance for similar coverage which is less than the Limit of Insurance for this coverage;
then the most we will pay for all damages resulting from any one `accident' with an `uninsured motor vehicle' or an `underinsured motor vehicle' shall not exceed the highest applicable limit of insurance under any coverage form or policy providing coverage to that `insured' as an individual named insured.
Botti and his wife are "named insureds" under a policy of insurance issued by State Farm Insurance (State Farm), which covers Botti's family vehicle. The State Farm policy provides for $100,000 in UM coverage limits. Thus, pursuant to the step-down clause, Botti would be entitled to UM coverage under the CNA policy, but the limit of such coverage would be $100,000 rather than $1 million.
After the accident, Botti sought UM coverage from CNA. CNA informed him that his UM coverage was limited to $100,000 as per the terms of the step-down clause. Botti sued CNA and State Farm seeking a declaration of rights. CNA counterclaimed for declaratory relief. State Farm cross-claimed for contribution from CNA.
Botti moved for summary judgment. State Farm joined in his motion. CNA opposed the motion. The parties stipulated that: (1) Botti was an insured under the CNA policy and entitled to UM coverage, (2) if the full limits of the CNA policy applied, then the pro rata share of payment would be ninety-one percent by CNA and nine percent by State Farm.
*1124 Botti argued that the step-down clause did not apply because he was a "named insured" by virtue of his status as JWG's employee and thus entitled to use the Jeep for personal and business purposes. Botti also argued that the CNA policy's PIP endorsement named individuals in addition to JWG. Therefore, by not naming any individuals on the UM endorsement, JWG must have intended for all employees to be "named insureds."
The judge found that, as an employee of JWG and the exclusive operator of the Jeep, Botti was a "named insured." Therefore, the step-down clause did not apply to Botti. The judge granted Botti's motion for summary judgment.
On appeal, CNA contends that its step-down clause is valid and enforceable and applicable to Botti's claim. We agree. There is no support in the facts or in governing case law to warrant a finding that Botti is a "named insured."
We begin our analysis with a review of settled legal authorities. Insurance policies are contracts. Therefore, policies are subject to general principles of contract law. See Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717 (1960). However, as noted by the leading treatise on insurance law in this state,
principles of construction applicable to general contracts have been modified over the years to reflect the overriding public policy, reflected in both statutory and case law, of protecting the individual policy holder.
[Craig & Pomeroy, New Jersey Auto Insurance Law § 2:3, at 28 (2003)].
Thus, insurance polices are subject to special rules of interpretation. Araya, supra, 353 N.J.Super. at 206, 801 A.2d 1194.
The following special construction principles are relevant to this appeal. First, any ambiguity in an insurance contract must be resolved against the insurer and in favor of coverage. Cruz-Mendez v. ISU/Ins. Servs., 156 N.J. 556, 571, 722 A.2d 515 (1999); Doto v. Russo, 140 N.J. 544, 556, 659 A.2d 1371 (1995). However, if there is no ambiguity present, an insurance contract will be enforced as written. See Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 245-50, 405 A.2d 788 (1979); Di Orio v. New Jersey Mfrs. Ins. Co., 79 N.J. 257, 267-70, 398 A.2d 1274 (1979). A "genuine ambiguity" exists only "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Weedo, supra, 81 N.J. at 247, 405 A.2d 788.
Second, policies must be construed liberally in favor of the insured's reasonable expectations of coverage. Gibson v. Callaghan, 158 N.J. 662, 671, 730 A.2d 1278 (1999).
Third, when a policy of insurance does not make clear its intention to exclude a class of claimants or claims otherwise allowed thereunder, coverage will be found to exist. See New Jersey Mfrs. Ins. Co. v. Breen, 153 N.J. 424, 430-431, 710 A.2d 421 (1998); Magnifico v. Rutgers Cas. Ins. Co., 153 N.J. 406, 416-418, 710 A.2d 412 (1998).
Fourth, an insured is chargeable with knowledge of the contents of a policy, in the absence of fraud or unconscionable conduct on the part of the insurer. Heake v. Atlantic Cas. Ins. Co., 15 N.J. 475, 483, 105 A.2d 526 (1954). For that reason, "reformation will be denied if [an insured] has been negligent in failing to apprise himself of its contents." Ibid.; see also Harr v. Allstate Ins. Co., 54 N.J. 287, 309, 255 A.2d 208 (1969) (noting that "an insured is chargeable, for reasons of business utility, with knowledge of the contents of a policy").
Fifth, the "courts should not write for the insured a better policy of insurance *1125 than the one purchased." Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 529, 562 A.2d 208 (1989); Lee v. General Accident Ins. Co., 337 N.J.Super. 509, 513, 767 A.2d 985 (App.Div.2001).
In summary, when the terms of a policy are clear, the courts will enforce it as written and will not make a better contract for either of the parties. Kampf, supra, 33 N.J. at 43, 161 A.2d 717; Lee, supra, 337 N.J.Super. at 513, 767 A.2d 985. We have observed that the rule of "[l]iberality in the construction of an agreement against the drafter when ambiguity appears, or when strict constructions would contravene public policy, is a salutary principle." Tomaiuoli v. United States Fid. and Guar. Co., 75 N.J.Super. 192, 207, 182 A.2d 582 (App.Div.1962). "But, it should not be used as an excuse to read into a private agreement that which is not there, and that which people dealing fairly with one another could not have intended." Ibid.; Werner Indus., Inc. v. First State Ins. Co., 112 N.J. 30, 39, 548 A.2d 188 (1988). Thus, the court's goal is to ensure that the "reasonable expectations of the assured in the purchase of his [or her] insurance policy" are justly fulfilled. Allstate Ins. Co. v. Schmitt, 238 N.J.Super. 619, 627, 570 A.2d 488 (App.Div.), certif. denied, 122 N.J. 395, 585 A.2d 394 (1990).
Here, we find no ambiguity in construing the term "named insured" or the provisions of the step-down clause. It is important to distinguish the concept of "named insured" and "insured." An automobile insurance policy ordinarily sets in the "declarations" section the term "named insured," followed by specific names of either a natural person or any legally cognizable entity. Logically, a legal entity does not have "relatives," or "family members." Nevertheless, the term "named insured" is self-defining. The term refers only to the names so appearing in the declaration. John Harrington, Annotation, Who Is "Named Insured" Within Meaning Of Automobile Insurance Coverage, 91 A.L.R.3d 1280, 1284-85 (1979).
On the other hand, an insured is any one who is entitled to coverage. This coverage may result by virtue of a person's status as an operator or occupier of a covered auto. In addition, a "family member" of a "named insured" may be an insured.
Here, the declaration page clearly indicates that the only "named insureds" are JWG and its two corporate affiliates. There is no indication that someone else is a "named insured." Of course, as we have pointed out, the policy provides coverage for many "insureds." We perceive no ambiguity from the fact that the "named insureds" here are corporations. It has been suggested that because a corporation cannot sustain bodily injury, the coverage is "illusory." However, we disagree with such a conclusion. First, we note that the UM endorsement provides coverage for bodily injury and/or property damage. Second, the UM endorsement does not limit coverage to the "named insureds." In addition to the "named insureds," coverage is afforded to "anyone occupying a covered `auto,' or a temporary substitute for a covered `auto.'" We further note that the CNA policy covered many `autos,' the Jeep being number thirty-eight. Therefore, many individuals were potential UM claimants under the CNA policy. Each potential claimant could receive up to $1 million in UM coverage unless the claimant was a "named insured" in another policy providing lower UM coverage. In the latter case, the claimant would still receive a maximum UM coverage equal to that set by the claimant's policy. This hardly constitutes illusory coverage.
We also conclude that Botti could not have had an objectively reasonable *1126 expectation of being a named insured in the CNA policy. It is true that "if an insured's `reasonable expectations' contravene the plain meaning of a policy, even its plain meaning can be overcome." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175, 607 A.2d 1255 (1992). Thus,
[w]hen members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subjected to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded `to the full extent that any fair interpretation will allow.'

[Kievit v. Loyal Prot. Life Ins. Co., 34 N.J. 475, 482, 170 A.2d 22 (1961) (quoting Danek v. Hommer, 28 N.J.Super. 68, 100 A.2d 198 (App.Div. 1953), aff'd, 15 N.J. 573, 105 A.2d 677 (1954)).]
It is also true that an insured who has a reasonable belief that he or she has purchased certain coverage, will not be denied such coverage because "boilerplate" language in the policy negates it. Riders Ins. Co. v. First Trenton Cos., 354 N.J.Super. 491, 493, 808 A.2d 143 (App.Div.2002). That very sound principle, however, cannot help an insured who makes a choice about coverage and later that choice turns out to have been improvident. Here, Botti's name could have been added as a "named insured" in the UM endorsement. This might have affected the amount of the policy premium, but as Botti concedes, in the personal injury protection and Drive Other Car endorsements of the CNA policy, other JWG employees were added as additional insureds.
We also note that neither the declaration pages of the policy nor of the UM endorsement created any expectation of coverage which was limited by other provisions of the policy. See Lehrhoff v. Aetna Cas. and Sur. Co., 271 N.J.Super. 340, 346-47, 638 A.2d 889 (App.Div.1994). The provisions of the step down clause itself are clear and unambiguous. There is no challenge that the language used by the drafter is capable of different construction. The only challenge is that the drafter could not have intended for a corporate entity, or entities, to be the sole "name insured." We have already addressed that argument.
Accordingly, because neither the step-down clause nor the term "named insured" are ambiguous, the limitation on insurance must be enforced against Botti as written.
Reversed and remanded to the Law Division for the entry of judgment in favor of CNA.
NOTES
[1] In addition to JWG, Acetylene Supply Company and Acetylene Service were the "named insureds."