833 A.2d 66 (2003)
363 N.J. Super. 344
John F. DICKSON, Plaintiff-Respondent,
v.
SELECTIVE INSURANCE GROUP, INC., Defendant-Appellant, and
Moten Associates, Defendant/Third Party Plaintiff, and
Air Distribution Systems, Inc., and Christopher C. Poyatt, Third Party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued September 16, 2003.
Decided October 20, 2003.
Daniel J. Pomeroy, Springfield, argued the cause for appellant (Mortenson and Pomeroy, attorneys; Mr. Pomeroy and Karen E. Heller, New York, NY, on the brief).
Murray S. Issadore argued the cause for respondent.
Before Judges STERN, A.A. RODRÍGUEZ and LEFELT.
The opinion of the court was delivered by STERN, P.J.A.D.
Defendant Selective Insurance Group appeals from an order of September 27, 2002, which "rescinded" an order of April 4, 2002, granting summary judgment to defendant. The September 27, 2002, order also granted summary judgment to plaintiff, John F. Dickson, against Selective. The appeal involves a claim for underinsured motorist ("UIM") coverage by a shareholder of an insured corporation whose business vehicle was not involved in the accident occurring when the vehicle plaintiff was riding in was hit by a third *67 party. Selective contends that the Law Division's "reconsideration of the summary judgment order that dismissed the action against Selective was erroneous and should be reversed and summary judgment in Selective's favor reinstated." We agree with Selective that plaintiff is not entitled to UIM protection under its policy.
The material facts are undisputed. According to the complaint, on May 17, 1998, plaintiff "was a rear seat passenger in a vehicle owned and operated by Douglas Campbell when said vehicle was struck hard from behind by a vehicle owned and operated by Aldo Caccianmani and propelled into another vehicle directly in front." As a result of the accident, plaintiff alleges that he sustained serious injuries.
After exhausting the available coverage under the Campbell and Caccianmani policies, plaintiff sought UIM coverage under the policy issued by Selective to Air Distribution Systems, Inc. ("ADS"), a corporation of which plaintiff was one of four equal shareholders. The four ADS shareholders each drove vehicles that were listed on ADS' automobile insurance policy. The ADS-insured vehicle Mr. Dickson drove was "personally" leased by him for both his personal and business use, but the lease was paid by ADS. Mr. Dickson did not have any personally owned vehicle at the time of the accident. The ADS policy provides up to $1,000,000.00 of UIM coverage.
The insurance policy issued to ADS was purchased through defendant Moten Associates.[1] Prior to purchasing that policy, ADS shareholder Christopher Poyatt discussed with Moten representatives the insurance coverages it required. No other shareholders were involved in the discussions. At the time of contracting for insurance, Poyatt did not give Moten Associates any indication that any shareholder was to receive more coverage than any other shareholder. According to Moten's Stanley Szczurek, Poyatt did not indicate that plaintiff should be listed as a "named insured" or that plaintiff wanted individual UM-UIM coverage.
The insurance policy provided ADS with commercial insurance for the liability and property damage including automobile insurance for its business vehicles for the period from July 1, 1997 to July 1, 1998. The policy's "Common Declaration" indicates that the named insured is "Air Distribution Systems, Inc.," and notes that the insured is a "corporation." The policy's "Declaration Page"[2] listed each of the owned vehicles driven by the shareholders as "covered autos." A fifth vehicle was also insured and used by the corporation "for delivery purposes." According to Susan Jones, an account manager with Moten Associates, Selective does not allow brokers "to name people individually on [a corporate] policy."
Shortly after ADS obtained a quote for the insurance from Moten Associates, Poyatt *68 sought additional personal coverage for his wife's personal vehicle. Poyatt explained that he was the only shareholder who needed coverage for a personal vehicle. Accordingly, a "Drive Other Car Coverage" endorsement which provides an individual with coverage where he or she does not have a personal automobile policy, was added with respect to Poyatt and his wife only. No other shareholders were given that coverage. Poyatt did not have a "personal auto policy" for the vehicle his wife drove, and he was unaware that the other shareholders were not fully covered under the policy. Poyatt stated in his deposition that at the time of contracting for insurance he had no knowledge of the laws regarding uninsured/underinsured motorist coverage or how they worked. Moreover, he stated that nobody from Moten or Selective Insurance "has ever explained to me drive other car coverage or uninsured/underinsured motorists."
The policy issued to ADS contained the following provisions concerning UM and UIM coverage:
A. COVERAGE
1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured," or "property damage" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "uninsured motor vehicle" or an "underinsured motor vehicle."
2. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.
B. WHO IS AN INSURED
1. You.
2. If you are an individual, any "family member."
3. Any one else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.
4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."
....
F. ADDITIONAL DEFINITIONS
As used in this endorsement:
....
5. "Underinsured motor vehicle" means the following:
a. With respect to an "insured" who is:
(1) is not the individual named insured under this policy; and
(2) is an individual named insured under one or more other policies providing similar coverage.
"underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a liability bond or policy applies at the time of an "accident" but its limit of liability is less than the highest applicable limit of liability under any coverage form or policy providing coverage to that "insured" as an individual named insured.
b. With respect to an "insured" who:
(1) is not the individual named insured under this policy or any other policy; and
(2) is insured as a "family member" under one or more other policies providing similar coverage.
"underinsured motor vehicle" means a land motor vehicle or trailer or any type to which a liability *69 bond or policy applies at the time of an "accident" but its limit for liability is less than the highest applicable limit of liability under any coverage form or policy providing coverage to that "insured" as a "family member."
c. With respect to any other "insured" who is not described in Paragraph a. or b. above, "underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a liability bond or policy applies at the time of an "accident" but its limit of liability is less than the Limit of Insurance for this Coverage.
However, an "underinsured motor vehicle" does not include any vehicle:
(1) Owned or operated by a self-insurer under any applicable motor vehicle law;
(2) Owned by any governmental unit or agency;
(3) Operated on rails or crawler treads;
(4) Designed for use mainly off public roads while not on public roads; or
(5) While located for use as a residence or premises.
In ultimately granting summary judgment to plaintiff based on these facts, the motion judge concluded that "[t]he fact that [plaintiff] had only one vehicle, that vehicle that he had for his company use and personal use was a listed vehicle on the policy, I find that there would be [UIM] coverage" under the business auto policy. The judge added that he personally "disagree[d] with [his] decision" but felt bound by the recent decisions of this court in Araya v. Farm Family Casualty Ins. Co., 353 N.J.Super. 203, 801 A.2d 1194 (App.Div.), certif. denied, 175 N.J. 77, 812 A.2d 1109 (2002), and Macchi v. Connecticut Gen. Ins. Co., 354 N.J.Super. 64, 804 A.2d 596 (App.Div.), certif. denied, 175 N.J. 79, 812 A.2d 1111 (2002), on which plaintiff relied.
Before us, Selective argues that it is not obligated to provide plaintiff with UIM coverage for the accident. It contends that the trial court's decision was erroneous because plaintiff was not in a covered vehicle at the time of the accident.[3]
We commence our analysis by referring to the oft-cited case of Cook-Sauvageau v. PMA Group, 295 N.J.Super. 620, 685 A.2d 978 (App.Div.1996), certif. denied, 150 N.J. 29, 695 A.2d 671 (1997), in which we held that an employee injured while operating a business-owned vehicle during the course of his or her employment was entitled to UIM coverage under the employer's business automobile insurance policy. As Judge Skillman wrote:
[I]t would be manifestly inconsistent with the plain language of the UIM endorsement of [the defendant's] business automobile policy and with the reasonable expectations of both the employer and employee to deny the benefits of *70 UIM coverage to an employee injured while operating one of the employer's vehicles during the course of employment.
....
When as in this case a business automobile policy is issued to a corporate employer, the actual purchaser of the policy cannot itself suffer bodily injury and thus could not maintain a claim for UIM benefits except perhaps in the rather unusual situation where its collision coverage was insufficient to cover the full damages to its vehicle. On the other hand, if the UIM endorsement is construed to extend coverage to the business' employees, it provides a financial benefit not only to the employees but also to the employer.

[Id. at 627-28, 685 A.2d 978.]
As in this case, the plaintiff in Araya sought UIM coverage under his employer's business automobile policy. We found "that the named insured ... was [the business entity]" and applied our holding in Cook-Sauvageau "to hold that [Araya] is entitled to UIM coverage under the employer's business auto policy." Araya v. Farm Family Casualty Ins. Co., supra, 353 N.J.Super. at 207, 801 A.2d 1194. Araya had been named as a covered driver, and the sole proprietor of his employer "testified that by naming [him and another one of his `main guys'] as covered drivers he intended to include both employees as insured under the policy." Id. at 208-09, 801 A.2d 1194. We noted the importance of the declaration page, "the one page of the policy tailored to the particular insured and not merely boilerplate, which must be deemed to define coverage and the insured's expectation of coverage." Id. at 210, 801 A.2d 1194 (quoting Lehrhoff v. Aetna Casualty & Surety Co., 271 N.J.Super. 340, 346-47, 638 A.2d 889 (App.Div. 1994)). See also Botti v. CNA Insurance Co., 361 N.J.Super. 217, 225-27, 824 A.2d 1120 (App.Div.2003) (relying on the declaration page to determine insureds and coverage). In Araya we held:
that when a business auto policy fails to designate the insured business entity's human agent or agents entitled to receive UIM benefits, we will look to the Declarations Page as the best indicator of the insured's reasonable expectations of coverage. Any ambiguity created by boilerplate provisions found elsewhere in the policy will be resolved against the drafters of the policy and in favor of coverage. In this case, the covered drivers listed in the Declarations Page provide the best indication of who is to receive UIM benefits.
There is no question under this analysis that plaintiff is entitled to UIM benefits as if he were a named insured. His rights derive from the issuing of the policy to a business entity and his designation as a covered driver. Therefore, plaintiff is entitled to recover UIM benefits under this policy.
[Araya v. Farm Family Casualty Ins. Co., supra, 353 N.J.Super. at 211, 801 A.2d 1194.]
In Macchi v. Connecticut Gen. Ins. Co., 354 N.J.Super. 64, 804 A.2d 596 (App.Div.), certif. denied, 175 N.J. 79, 812 A.2d 1111 (2002), the plaintiff sought uninsured ("UM") as well as UIM benefits under the policy of the employer of her estranged husband. She "was operating, with permission, a vehicle owned by her estranged husband's business" when she exited the car to give assistance to the driver of an overturned vehicle involved in an accident, which she observed. She was struck by a third vehicle "[w]hile standing alongside the roadway, near the disabled vehicle...." Id. at 68, 804 A.2d 596. The car which plaintiff was found to have been "occupying," when she was struck and severely *71 injured (id. at 71-72, 804 A.2d 596), was owned by the business of which her husband was "the principal owner," id. at 73, 804 A.2d 596, and insured under a business auto policy which covered four vehicles, including the one she was driving. Her husband was also a named insured in a separate "personal auto policy" which covered "another vehicle owned personally" by him.
Applying the rationale of Cook-Sauvageau, plaintiff was found "to be covered as a named insured" of the business auto policy as "the designated primary user of the insured vehicle...." Id. at 75, 804 A.2d 596. She was therefore entitled to UIM coverage "undiminished by the unmet conditions of the policy's `step down' provisions." Id. at 76, 804 A.2d 596. In so holding, we noted the importance of the declaration page of the policy, as developed in Araya, supra, and said:
Our experience suggests that it is not uncommon for businesses to include the personal vehicles of company principals and their families within the coverage of business auto insurance policies. Thus, it is fair to consider the carrier to be on sufficient notice to be required to express any limitations in coverage with greater precision than was employed here, especially where it is clear on the face of the policy that the vehicle at issue, here a Corvette, is a personal-use automobile and is garaged at a location other than the place where the other vehicles insured under the business auto insurance policy are kept. Cf. Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 278-79, 765 A.2d 195 (2001).
[Macchi v. Connecticut Gen. Ins. Co., supra, 354 N.J.Super. at 75, 804 A.2d 596.]
Subsequently, in Botti v. CNA, supra, we held that plaintiff who was injured while driving a jeep owned by his employer was an "insured," but not a "named insured," under his employer's CNA policy even though he contributed to the cost of the insurance. 361 N.J.Super. at 222, 824 A.2d 1120. He was also a named insured in a personal automobile policy. Thus, while entitled to uninsured ("UM") coverage as insured under the employer's CNA business policy, the "step down" provisions of that policy applied because he was not a "named insured" under the business policy. Id. at 223-24, 824 A.2d 1120. We rejected an argument that "by not naming any individuals on the UM endorsement, [the employer] must have intended for all employees to be `named insureds,'" id. at 223, 824 A.2d 1120, and concluded plaintiff was not a "named insured" because "the declaration page clearly indicates that the only `named insureds' are [the corporation] and its two corporate affiliates," and no individuals were named, id. at 226, 824 A.2d 1120, although two other employees were added as "additional insureds" under the PIP and "drive other car" endorsements. In enforcing the "step down" limitation against Botti, we recognized that "our holding differ[ed] from" the holdings in Macchi and Araya. Id. at 221, 824 A.2d 1120.
We need not take issue with Macchi or Araya in reversing the judgment for plaintiff in this case because plaintiff was admittedly neither specifically named in the policy nor personally listed in any endorsement, although his co-shareholder was, and he was not riding in a business owned or covered vehicle. This case simply has no relation to the Selective policy or the business its policy insured.
In contrast to shareholder Poyatt, plaintiff was not named in the "drive other" endorsement, and plaintiff is not entitled to UIM coverage even though he is a shareholder of the insured corporation and an authorized or principal driver of a covered *72 vehicle. Plaintiff was riding in a vehicle neither owned by the insured corporation nor covered by the policy. Nor was he in the course of doing the insured's business at the time of the accident. Because he was neither a specifically named or covered driver, nor a person listed as insured or covered in the "drive other" endorsement, he was not entitled to UIM protection under the employer's policy for an accident occurring in a vehicle not owned and insured by his employer, and having no relation to his business. Araya dealt with UIM for a named "covered driver" listed on the declaration page of the insured corporation's policy, doing the insured's business, although plaintiff was not in the insured vehicle when the accident occurred, and the plaintiff in Macchi was found to be "occupying" or using a covered vehicle.
The judgment declaring coverage is reversed.
NOTES
[1] In his deposition, Moten's Stanley Szczurek stated that Moten was acting as a broker. Although the matter remained pending against Moten at the time the September 27, 2002 order was entered, the action against Moten was subsequently dismissed without prejudice, thereby making this matter final for purposes of appeal.
[2] The "Declaration Page" is not included within either party's appendix. However, the information contained therein is undisputed. According to plaintiff's counsel at the September 27th hearing, "[o]n the declaration sheet... ADS is named as the insured, and the vehicles covered under the policy are listed beneath that on the declaration page. One of those vehicles is the truck that John Dickson used. It's the only vehicle he owned for both his business and his personal use."
[3] Defendant also argues that pursuant to R. 4:49-2, the motion for reconsideration was untimely because it was filed well after the allowable twenty-day period. However, at the time the motion was initially denied the order was interlocutory as defendant Moten Associates remained in the case and a motion to amend or reconsider interlocutory orders may be made at any time until final judgment is entered. See Johnson v. Cyklop Strapping Corp., 220 N.J.Super. 250, 257, 531 A.2d 1078 (App.Div.1987); Pressler, Current N.J. Court Rules, comment on R. 4:49-2 (2003). The court's inherent power "does not prevent a trial court from granting relief from its interlocutory orders upon a change in the governing law [or in its discretion] before litigation ends." Cyklop Strapping Corp., supra, 220 N.J.Super. at 263, 531 A.2d 1078.