**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2177-21

GREGORY B. FREEMAN and
TAMMY FREEMAN, his wife,

     Plaintiffs-Respondents,

v.

SHADI M. MAKANASH, TMS
LOGISTICS, NEW JERSEY
MANUFACTURERS INSURANCE
COMPANY, NATIONALEASE,
and LEASE LINE,

     Defendants,

and

FEDERAL INSURANCE
COMPANY,

     Defendant-Appellant.

_____

Argued October 4, 2022 – Decided October 19, 2022

Before Judges Geiger and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law
Division, Middlesex County, Docket No. L-2463-19.

John M. Bashwiner argued the cause for appellant (Bashwiner and Deer, LLC, attorneys; John M. Bashwiner, of counsel and on the briefs).

Mark V. Kuminski argued the cause for respondents (Levinson Axelrod, PA, attorneys; Mark V. Kuminski, on the brief).

PER CURIAM

Gregory B. Freeman (plaintiff) was injured in a motor vehicle accident in the course of his employment while driving a vehicle leased by his employer. The other driver, who allegedly caused the accident, fled the scene and has not been identified. Plaintiff and his wife, Tammy Freeman[1] (collectively plaintiffs) sought uninsured motorist (UM) benefits from his employer's vehicle insurer, Federal Insurance Company (Federal). The vehicle plaintiff was driving was leased, not owned, by plaintiff's employer. Federal denied coverage for UM benefits, claiming the policy did not provide UM benefits for leased vehicles.

Plaintiffs brought this vehicle insurance coverage action, contending they are covered for UM benefits under the policy issued by Federal pursuant to applicable New Jersey statutes. Federal appeals from two adverse Law Division orders. The first granted plaintiffs' cross-motion for summary judgment,

---

[1] Tammy Freeman asserts a derivative per quod claim.

declaring that Federal must provide UM benefits to plaintiffs up to the policy limits. The second granted plaintiffs' motion to compel submission of their UM claim to binding arbitration and related relief. We affirm both orders.

We glean the following facts from the record. Plaintiff was employed by Glenway Distribution (Glenway) as a driver. On May 15, 2017, plaintiff was seriously injured in a motor vehicle accident while operating a tractor-trailer on behalf of Glenway. The vehicle plaintiff was driving was struck from behind by a tractor-trailer operated by defendant Shadi Makanash (Makanash) and owned by defendant TMS Logistics (TMS). Makanash and TMS claim the accident was caused by a phantom tractor-trailer that stopped abruptly in front of plaintiff's truck and left the scene of the accident before it or its driver were identified.

Glenway leased the tractor-trailer plaintiff was operating from its owner, defendant Lease Line, Inc. (Lease Line), under a short-term lease agreement (STLA). A separate entity, NationaLease, brokered the STLA.

The STLA provided that Glenway was responsible for obtaining liability insurance for the tractor-trailer, not Lease Line. At the time of the accident, Glenway had a fleet business vehicle policy with Federal. Federal's policy states that it provides "primary" coverage for "insured contract[s]," which include

A-2177-21

"[t]hat part of any contract or agreement entered into, as part of [Glenway's] business, pertaining to the rental or lease[] by [Glenway] or any of [Glenway's] 'employees'[] of any 'auto.'" The parties agree that the STLA is an "insured contract" and therefore covered by the Federal policy. The Federal policy provides "liability" coverage for "[a]ny" automobile, and "uninsured motorists" (UM) coverage for "[o]wned" automobiles. The coverage limit for each is $1,000,000. The owner of the vehicle, Lease Line, did not provide any other insurance coverage.

At the time of the accident, plaintiffs had a motor vehicle policy with defendant New Jersey Manufacturers Insurance Company (NJM). The NJM policy provides $100,000 of UM coverage.

Plaintiffs initially filed a complaint alleging negligence against TMS and Makanash, the owner and operator of the tractor-trailer that struck plaintiff from behind. Because the other tractor-trailer left the accident scene, the complaint also asserted a claim for UM benefits against NJM and Federal. Thereafter, the trial court granted plaintiffs leave to file an amended complaint that added Lease Line and NationaLease as additional defendants.

Around that same time, Federal moved for summary judgment. Plaintiffs cross-moved for summary judgment against Federal, seeking a declaration that

4

plaintiffs were insured for UM benefits in the amount of $1,000,000 under Federal's policy. On August 7, 2020, the trial court denied both motions, finding them to be premature.

In February 2021, NationaLease filed a motion to dismiss plaintiffs' complaint, arguing it was not obligated to provide UM benefits to plaintiffs. On March 1, 2021, plaintiffs' claims against TMS and Makanash were dismissed by stipulation.

On March 12, 2021, plaintiffs filed a motion "seeking a declaratory ruling regarding plaintiff's entitlement [to UM] benefits" from Federal, NJM, Lease Line, and NationaLease. The court granted dismissal of plaintiffs' claims against NationaLease pursuant to a stipulation of the parties. On July 7, 2021, the court heard oral argument as to the remaining defendants. At the hearing, NJM did not contest that it was required to provide $100,000 in UM coverage to plaintiffs.

Federal opposed plaintiffs' motion, arguing it was required to provide only liability coverage on the vehicle operated by plaintiff, not UM coverage, because it provided UM coverage only on vehicles owned by Glenway, not vehicles that Glenway leased. Recognizing that UM coverage is statutorily required for vehicles registered in New Jersey, Federal repeatedly referred to the case as an

5

"anomaly." Alternatively, Federal argued that if plaintiff was entitled to UM coverage, it would be limited to the "statutory minimum" amount identified in N.J.S.A 17:28-1.1(a).

The court rejected Federal's arguments. The court relied upon the requirements imposed by N.J.S.A 17:28-1.1(f), which provides:

> [A] motor vehicle liability policy or renewal of such policy of insurance, insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle, issued in this State to a corporate or business entity with respect to any motor vehicle registered or principally garaged in this State, shall not provide less uninsured or underinsured motorist coverage for an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy. A policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under the policy to an individual employed by the corporate or business entity, regardless of whether the individual is an additional named insured under that policy or is a named insured or is covered under any other policy providing uninsured or underinsured motorist coverage.

Applying the statute, the trial court found Federal issued a motor vehicle liability policy to Glenway, a corporate entity, and plaintiff was an employee of that entity. It further found that the subject vehicle was registered in New Jersey.

A-2177-21

The court also found that the phrase "[u]se of a motor vehicle" was a "catch-all" that encompassed leased vehicles.

The court explained that language in a policy "can't render any language in a statute nugatory, meaningless, [or] worthless." The court reasoned that liability coverage and UM coverage are "tied together" and that Federal was required to provide the maximum [UM] coverage available under its policy, which was $1,000,000. Construing N.J.S.A 17:28-1.1(f) to give it its "ordinary meaning," the court found that subsection (f) covered leased vehicles and required the policy to provide UM coverage to Glenway's employees in an amount not less than the maximum coverage available under the policy. Therefore, the court concluded that Federal was statutorily required to provide plaintiff with UM coverage in the amount of $1,000,000, on a pro rata basis with the NJM policy, which provides $100,000 in UM coverage. In reaching that conclusion, the court rejected Federal's argument that requiring it to provide UM coverage constituted impermissible reformation of the policy.

The court next addressed Lease Line's responsibility to provide insurance coverage as the registered owner of the vehicle. Lease Line argued that it had "one statutory obligation," which was to "maintain liability coverage," and that Federal satisfied that obligation on Lease Line's behalf. The court again

7

disagreed, noting that as the owner of the vehicle, Lease Line must provide liability coverage. Because it found the requirements to provide liability coverage and UM coverage were "tied together" under N.J.S.A. 17:28-1.1, the court found that Lease Line was required to provide UM coverage even though it leased the vehicle to Glenway. However, since N.J.S.A 17:28-1.1(f) did not apply to Lease Line, the court concluded that Lease Line was only required to provide $15,000 in UM coverage, the minimum amount of coverage mandated by N.J.S.A 17:28-1.1(a).

Under the court's ruling, NJM, Federal, and Lease Line would provide UM coverage on a pro rata basis. A July 13, 2021 order embodied the court's decision. Federal moved for leave to appeal the trial court's coverage decision. We denied the motion.

Following resolution of the coverage dispute, the amount of UM benefits recoverable for plaintiff's injuries still needed to be determined. Plaintiff, pursuant to the terms of the Federal policy, sent Federal a written demand for arbitration of that issue. Federal responded with uncertainty regarding whether it would submit to arbitration. On July 14, 2021, plaintiffs filed a motion to compel arbitration.

A-2177-21

On September 8, 2021, the trial court heard oral argument on plaintiffs' motion to compel arbitration. Federal argued that plaintiffs were not entitled to arbitration because the policy does not include plaintiff "as an insured." Federal further argued that the arbitration clause "as written only covers owned vehicles[.]"

The court again disagreed, finding that "plaintiff is [an] insured under the [Federal] policy" and "is entitled to all of the benefits of the [Federal] policy," including "the arbitration clause." On February 11, 2022, the trial court entered an order embodying its ruling.

In the meantime, on October 22, 2021, plaintiffs' claims against Lease Line were dismissed with prejudice pursuant to a voluntary stipulation of dismissal. On February 1, 2022, plaintiffs' claim against NJM was dismissed with prejudice by stipulation. This left Federal as the only remaining defendant.

This appeal followed. The trial court granted Federal's motion to stay the arbitration proceeding pending the outcome of Federal's appeal.

Federal raises the following points for our consideration:

POINT ONE

THE TRIAL COURT COMMITTED PLAIN, REVERSIBLE ERROR BY MANDATING AN ENTITLEMENT TO UNINSURED MOTORIST BENEFITS UNDER THE FEDERAL POLICY BY

9

OPERATION OF LAW BEYOND WHAT FEDERAL WAS CONTRACTUALLY OBLIGATED AND LEGALLY REQUIRED TO PROVIDE.

A. The Federal Policy Complies with the UM Coverage Requirements of the STLA.

B. The Federal Policy Complies with New Jersey's Statutory Requirements for Liability Coverage.

C. N.J.S.A. 17:28-1.1(f) Does Not Apply in this Matter.

POINT TWO

THE TRIAL COURT COMMITTED PLAIN, REVERSIBLE ERROR BY RULING THAT BINDING UM ARBITRATION WAS MANDATED BY OPERATION OF LAW AND THE LAW OF THE FEDERAL POLICY.

As a general principle, "[i]nterpretation and construction of a contract is a matter of law for the court subject to de novo review." In re Balk, 445 N.J. Super. 395, 400 (App. Div. 2016) (quoting Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998)). So too is the interpretation of an insurance contract. Sealed Air Corp. v. Royal Indem. Co., 404 N.J. Super. 363, 375 (App. Div. 2008).

However, while contract interpretation is a question of law, "[d]e novo review of a contract is predicated on the absence of a factual dispute." Kieffer

v. Best Buy, 205 N.J. 213, 223 n.5 (2011) (citing Jennings v. Pinto, 5 N.J. 562, 569-70 (1950)). Here, the parties do not dispute the relevant contractual provisions. They agree that the STLA obligated Glenway to provide $1,000,000 of liability coverage on plaintiff's vehicle, and that Glenway, through Federal, provided such coverage. Instead, the parties disagree over the impact of N.J.S.A. 17:28-1.1 on their contractual agreement.

Because there is no material factual dispute in this case, we owe "no special deference" to the trial court's interpretation of the insurance policy or "the legal consequences that flow from [the] established facts." Balk, 445 N.J. Super. at 400 (quoting Kieffer, 205 N.J. at 223; Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). We review its analysis de novo and "look at the contract[s] with fresh eyes." Kieffer, 205 N.J. at 223.

Federal argues the terms of its policy do not provide UM coverage for the vehicle operated by plaintiff; therefore, it is not obligated to provide UM coverage to plaintiff. While Federal recognizes this is "unusual" and "unexpected," it maintains the policy does not violate any New Jersey statute.

Federal contends N.J.S.A. 17:28-1.1(f) was "designed to prevent corporate executives from insuring their vehicles to a maximum amount of coverage and then not providing the same coverage to an employee operating

11

company vehicles." Asserting this is "not the situation here," Federal claims that N.J.S.A. 17:28-1.1(f) is not applicable.

Plaintiffs respond by arguing that N.J.S.A. 17:28-1.1(a) requires a liability insurance policy to provide UM coverage for all vehicles insured under the policy, regardless of whether a vehicle is owned or leased. Plaintiffs contend that the statutory scheme governing UM benefits is mandatory, citing Berger v. First Trenton Indem. Co., 339 N.J. Super. 402, 411 (App. Div. 2001). Plaintiffs emphasize that pursuant to N.J.S.A. 17:28-1.1(a), all motor vehicle liability policies, except basic automobile policies, covering a motor vehicle registered in New Jersey are statutorily required to include UM coverage.

We are unpersuaded by Federal's argument. Under N.J.S.A 17:28-1.1(e)(2)(c), an "uninsured motor vehicle" includes "a hit and run motor vehicle." One of the primary purposes of N.J.S.A. 17:28-1.1 is "to protect insured motorists from uninsured financially irresponsible drivers." Livsey v. Mercury Ins. Grp., 197 N.J. 522, 534 (2009) (quoting Lundy v. Aetna Cas. & Sur. Co., 92 N.J. 550, 555 (1983)). To that end, "N.J.S.A. 17:28-1.1 must be construed liberally to foster the protection UM affords automobile accident victims." Rider Ins. Co. v. First Trenton Cos., 354 N.J. Super. 491, 497-98 (App. Div. 2002) (citing State Farm v. Zurich Am. Ins. Co., 62 N.J. 155, 168 (1973)).

A-2177-21

"Policy exclusions that aim to limit the members of the UM statutory class violate [N.J.S.A. 17:28-1.1's] purposes." Id. at 497 (citing Fernandez v. Selected Risks Ins. Co., 82 N.J. 236, 242 (1980)); see also Campbell v. Lion Ins. Co., 311 N.J. Super. 498, 507 (App. Div. 1998) ("[I]n UM cases our courts have frequently struck policy provisions which were more restrictive tha[n] those mandated by statute."); Berger, 339 N.J. Super. at 411 ("[W]hen a provision in the endorsement operate[] 'to reduce or take away from the coverage mandated in N.J.S.A. 17:28-1.1, the contractual provision will almost certainly be found void and the statutorily required coverage read into the policy as a matter of law.'" (quoting Craig & Pomeroy, New Jersey Auto Insurance Law, § 19.2, at 270 (2001))).

The trial court correctly determined that the Federal policy was statutorily required to provide UM coverage on the leased vehicle because it was registered in New Jersey. Our case law has consistently held that policies insuring vehicles registered in New Jersey must provide UM coverage. See e.g., Riccio v. Prudential Prop. & Cas. Ins. Co., 108 N.J. 493, 499 (1987) ("[N.J.S.A. 17:28-1.1] mandates the inclusion of UM coverage in all motor vehicle liability policies issued in this state . . . ."); Lundy, 92 N.J. at 553 ("[E]very motor vehicle registered or principally garaged in New Jersey must be insured with [UM

c]overage . . . ." (emphasis omitted) (quoting Mario Iavicoli, <u>No Fault &</u> <u>Comparative Negligence in New Jersey</u> 100 (1973))); <u>Campbell,</u> 311 N.J. Super. at 507 ("UM coverage must be included in every policy of insurance."); <u>Transp.</u> <u>of N.J. v. Watler,</u> 161 N.J. Super. 453, 461 (App. Div. 1978) ("The subsequent legislative history makes it quite clear that N.J.S.A. 17:28-1.1 was intended to require UM coverage in all insurance policies written for all motor vehicles registered or principally garaged in New Jersey."), <u>modified on other grounds,</u> 79 N.J. 400 (1979). "Thus, not only must every automobile policy have uninsured motorist coverage, N.J.S.A. 17:28-1.1, but also every automobile covered under that policy must have the statutorily required uninsured motorist coverage." <u>Lundy,</u> 92 N.J. at 553.

We next address the level of UM coverage that is required. Federal argues that even if it is required to provide UM coverage on the vehicle, the statutory minimum coverage levels imposed by N.J.S.A 17:28-1.1(a) apply. We disagree. Our Supreme Court has interpreted N.J.S.A 17:28-1.1(f) to mean:

> The level of UM/UIM coverage for a "named insured" in a policy shall be the same level that is provided to employees of the corporation or business entity by operation of law, as directed through the first sentence of [N.J.S.A 17:28-1.1(f)]. If the corporation or the business entity is the only named insured, then employees of that entity must receive under the commercial policy the maximum available amount of

14

UM/UIM coverage by operation of law, as directed through the second sentence of [N.J.S.A 17:28-1.1(f)].

[James v. N.J. Mfrs. Ins. Co., 216 N.J. 552, 566 (2014).]

Here, Glenway is the "only named insured" in the Federal policy, and plaintiff is an employee of Glenway. Plaintiff's accident and resulting injuries arose from the "use of a motor vehicle," and that vehicle was "registered" in New Jersey. See N.J.S.A 17:28-1.1(f). Therefore, plaintiffs are entitled to "the maximum [UM] coverage available under the [Federal] policy." James, 216 N.J. at 562. The policy's coverage limit is $1,000,000. UM coverage in that amount was required to be applied on a "prorated" basis with other applicable policies. N.J.S.A 17:28-1.1(c). For these reasons, we affirm the July 13, 2021 order.

Finally, we address whether plaintiffs' UM claim against Federal was subject to mandatory binding arbitration. The Federal policy contains the following arbitration clause:

> If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may

15

request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

The UM coverage dispute was resolved by the trial court's ruling. The remaining issue is the amount of UM benefits plaintiffs can recover under the Federal policy on a pro rata basis. Federal contends this issue is not arbitrable because its policy language does not include plaintiffs as insureds. As we have noted, the trial court disagreed, finding that plaintiff was an insured under the policy.

The Federal policy defines an "insured" as "any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage." In the "Business Auto Coverage Form," the 'Who Is An Insured' section states that "[a]nyone . . . using with [Glenway's] permission a covered 'auto' [that Glenway] . . . borrow[s]" is an "insured[]." However, in the "New Jersey Uninsured and Underinsured Motorists Coverage Endorsement," the "Who Is An Insured" section states that "[i]f the Named Insured is designated in the Schedule or Declarations as . . . [a] partnership, limited liability company, corporation[,] or any other form of organization, then the following are 'insureds' . . . [a]nyone 'occupying' a covered 'auto' . . . [but only if the covered auto is] out of service because of its breakdown, repair, servicing, 'loss[,]' or

16

destruction." The endorsement defines "occupying" as being "in, upon, getting in, on, out[,] or off" something.

Federal does not dispute that plaintiff was using a "covered" vehicle with Glenway's permission. He thus satisfies the "Business Auto Coverage Form" definition of "insured." However, plaintiff was not "occupying" an "out of service" vehicle at the time of the accident. He thus does not satisfy the "New Jersey Uninsured and Underinsured Motorists Coverage Endorsement" definition of "insured." The policy states that "the provisions of the [Business Auto] Coverage Form [continue to] apply unless modified by the endorsement," and endorsement modifications only alter the policy "[w]ith respect to coverage provided by th[e] endorsement."

Although the endorsement provides a different definition of "insured" than the coverage form, so that Federal considers plaintiff an "insured" in relation to liability coverage but not UM coverage, N.J.S.A 17:28-1.1(f) is controlling. It mandates that Federal provide UM coverage to plaintiff "regardless" of his status under the policy. As our Supreme Court has stated, such coverage arises "by operation of law," not by the terms of the policy. James, 216 N.J. at 568. Since "an insured is any one who is entitled to coverage," Botti v. CNA Ins. Co., 361 N.J. Super. 217, 226 (App. Div. 2003),

17

plaintiff is an "insured" in relation to UM coverage. He thus has standing to invoke the arbitration clause. The trial court correctly compelled submission of the amount of UM benefits plaintiffs can recover to mandatory binding arbitration. See Midland Ins. Co. v. Colatrella, 102 N.J. 612, 616-17 (1986) ("[I]t is the insured's burden in an arbitration proceeding with the insurer to prove that the hit-and-run driver was negligent."). We vacate the stay of the February 11, 2022 order and affirm the trial court's rulings in all respects.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2177-21